### DAVIS V. PORTER.

RECOVERY FOR IMPROVEMENTS MADE UNDER TERMS OF A LEASE RECITING THAT LEASED PREMISES WERE BEQUEATHED TO WIFE OF LESSEE, AND AUTHORIZING THE IMPROVEMENTS.

Davis entered into a written contract with Porter, his son-in-law, whereby he leased to him, during the life of Davis, a tract of land, and Porter was to pay therefor an annual rental of $250, and the taxes thereon. The lease further says: "The said James Davis having by his last will and testament bequeathed the premises leased, to Emily Porter, the wife of said Harry D. Porter, and daughter of the said James Davis, she is to take possession of the same from and after the death of said James Davis. It is expressly agreed on the part of the said James Davis that the said Harry D. Porter is to take free and entire possession of said premises hereby leased, from and after the 1st day of March, 1883, and to make such repairs and improvements thereon as he may deem best for his interest and the interest of his said wife. In a word, "he is to use said premises as if they were his own." Porter took possession of the premises and erected buildings and made other improvements thereon. Afterwards Davis, with the knowledge of Porter, executed and delivered to Emily Porter a deed for said premises for her life, with remainder to her children, and subsequently Porter and wife mortgaged the property to another to secure a debt. Davis sued Porter to recover the rents alleged to be due, and Porter, by way of counter-claim, sought to recover the damages which he claimed had resulted to him by his having made improvements on the real estate, and that Davis having conveyed only a life estate in the land to Mrs. Porter instead of a devise to her in fee, as he had stipulated to do, that he should recover the damages sustained by him thereby. On the trial the court found in favor of Porter on his counter-claim, and assessed his damages thereon, substantially at the cost of the improvements. Davis, Porter and his wife are still living. On this state of facts, *Held*:

*First*—That the contract did not provide that in any event Davis should compensate Porter for, or pay to him the cost or value of any improvement made by him on said premises.

*Second*—That the stipulations or recital in the contract as to the existence of the will of Davis, whereby he had devised to his said daughter, those premises in fee simple, and as to the right of Porter to make improvements thereon during his lease as he might deem best for the interest of himself and of his wife, were in the nature of an existing and material fact, and were a part consideration for the making of such contract, and it was incumbent upon Davis to see that such arrangement as to the devise of the land was carried out. And in case of a breach of this stipulation by Davis, he would be liable to Porter for the damages resulting to him therefrom.

*Third*—Such performance might be waived by Porter, and it was done in this case.

*Fourth*—Whether there has been a breach of the contract entitling Porter to sue thereon during the lifetime of Davis, *quære?* But if this be conceded, yet, owing to the fact that it is absolutely uncertain how long the term of Porter may continue, and whether his wife will survive her father or Porter survive his wife, and as the only damage that Porter might sustain by breach of this stipulation by Davis would be in the event that Mrs. Porter should survive her father and Porter survive her, and would be for the loss of his contingent right of dower in the improvements made, it is manifest that the cost of such improvements, with the interest thereon, is not the measure of his damages, and should not be allowed.

ERROR to the court of common pleas of Butler county.

SMITH, J.

We are of the opinion that the finding of the court of common pleas on the counter-claim interposed by the defendant below, was manifestly against the weight of the evidence, and therefore that there was error in the action of the court in overruling plaintiff's motion for a new trial, based on this ground. Without going at length into the discussion of the question, we may say:

*First*—That it seems entirely clear to us, that by the contract between the parties, by which Davis leased to Porter the eighty-acre tract of land during the life of Davis, at an annual rental of $250, to be paid by Porter to Davis, and by the express terms of which, Porter was authorized to enter upon the possession

of the tract and use the same as his own, and was privileged to make such improvements thereon, as in his opinion would be for the benefit of himself and his wife there was no stipulation or agreement, either express or implied, that if any such improvements were put upon the premises by Porter during the term, or at any time, that Davis was to be liable for the amount expended for such improvements or any part thereof. There is not the slightest reason, judging from the language used in the contract, that any such idea entered into the minds of the parties. As appears therefrom it would seem it was the intention of Davis that his daughter, the wife of Porter, should, under the terms of his will, then in existence, take this tract in fee simple as part of her share of the father's estate, and Porter expected the same thing, and therefore it was that it was stipulated that he might make such improvements, using any of the timber on the place in doing so. But as has been said, there was nothing in the agreement from which it could be inferred, that either party contemplated any payment by Davis on account of such improvement, and it would have been so unreasonable to so provide, that any such idea must be left out of the question.

*Second*—Has any such state of fact been averred in the counter-claim, and supported by the evidence, as shows that, for any reason, Davis has become liable to Porter, as for a breach of this contract or arrangement entered into between them, as makes the former liable to the latter, and if so, what would be the measure of the damages?

This contract of lease contains these provisions: Davis, in consideration of the covenants of Porter therein mentioned, among others the payment of an annual rental of $250, rents the land to Porter during Davis' life. Porter was also to pay all taxes thereon during the term. It then says: "The said James Davis, having by his last will and testament bequeathed the premises leased to Emily Porter, the wife of said Harry D. Porter, and daughter of the said James Davis, she is to take possession of the same from and after the death of said James Davis. It is expressly agreed on the part of the said James Davis that the said Harry D. Porter is to take free and entire possession of said premises hereby leased from and after the 1st day of March, 1883, and to make such repairs and improvements thereon as he may deem best for his interest and the interest of his said wife. In a word, he is to use said premises as if they were his own," and was only bound and obliged to pay the yearly rental and taxes as aforesaid.

What effect, if any, has this provision upon the rights of the parties? It is merely a recital of an existing fact, viz., that at the making of the contract of lease, Davis had executed a will, by which (if he allowed to remain as his valid last will until his death), Mrs. Porter was to have this tract of land, and that Davis, after the execution of this lease to Porter, could without incurring any liability to him, revoke his will, and by the conveyance of the land to some one else apparently put it out of his power to devise it to Mrs. Porter, and give her a good title to the same.

The question is one as to which we entertain some doubt. But speaking for myself I may say, that I incline strongly to the opinion, that the stipulation in question is in the nature of a representation of a material fact, and of one which naturally and probably was a part at least of the consideration of the contract, and an inducement for the defendant to enter into it, and expend his money in improvements upon the property to the possession of which, under the contract, he was entitled during the life of Davis, and on the death of Davis, if his will stood, the wife would take the fee simple, for we all agree that this is the meaning of the provision, and that if this is a stipulation of the contract which Davis was bound to perform, it would not be satisfied by the devise to her of an estate for life merely. I think the effect of the language was, that it was a part of the contract between Davis and Porter that he was to see that on his death Mrs. Porter took the title to this land, if she were still living; and that if this stipulation was broken by Davis, and as a result of this Porter was damnified, Davis would be answerable to Porter for the damages actually sustained by him by reason of the breach of this agreement, and Judge Cox agrees with me as to this.

But if this be so (and I think we do not all agree that it is), and it is an

agreement or covenant on the part of Davis that the wife of Porter on the death of her father should have this land) other important and difficult questions arise, and 1st: Has there been such a breach of this covenant on the part of Davis, as entitles Porter now to sue and recover damages therefor? The contract, if it be one, is that Davis at his death will leave a will under which Mrs. Porter would take the land. Davis is still alive. It is possible that although he made a conveyance of this land to Mrs. Porter for life, and to her children in remainder, several years ago, that he may re-possess himself of the land, and devise it to his daughter, Mrs. Porter. But there is the doctrine of the law (and it is the one as to which there is great diversity in the authorities), that a promissor by absolutely putting it out of his power to fulfill a contract entered into by him, may make himself liable, without demand, from the time he thus incapacitates himself, even though the time for performance has not yet arrived. He may for instance (according to some of the authorities,) "expressly repudiate the contract, in which case he may at once be sued, though the other party, if electing to sue immediately for the repudiation, cannot afterwards insist on the performance." Wheaton on Contracts, section 885a. In section 676, 2d Parsons on Contracts, is this statement: "If one bound to perform a future act, before the time for doing it declares his intention not to do it, this is no breach of his contract; but if his declaration be not withdrawn when the time comes for the act to be done, it constitutes a sufficient excuse for the default of the other." See authorities stated in decision of Judge. Conner, Ham. Common Pleas, 8 Ohio Dec. R., 657.

But if it is a breach on the part of Davis to have conveyed this property to Porter's wife and children as he did, it was a breach which might be waived by Porter. He knew of this conveyance to his wife for her life, with remainder to her children, but made no objection to it, but acted upon it, and thereby practically consented to it, when with his wife he executed a mortgage upon it doubtless to secure his own debt, and ought not now to be allowed to claim that what was done was in violation of his rights.

But if it be conceded that there is now a cause of action, by reason of a breach of the contract, and if it has not been waived by Porter in the manner stated, it seems to us clear that he is not entitled to recover anything like the amount awarded to him by the court. Of course it would be very difficult to arrive at a correct conclusion as to the amount of his probable loss. Davis is still alive, and it is therefore wholly uncertain how long the term of Porter will still continue. It may be ten, fifteen or twenty years. He has already been in the use and enjoyment of these improvements for several years, and may be for many years more while his lease continues. This should be taken into the account. It is possible, and perhaps probable that by the time the lease terminates, the improvements made may be gone. He would then have suffered no loss by the breach of the contract by Davis. Then the question would arise as to Mrs. Davis living longer than her father, for if she should die before him, even if the land had been devised to her in fee, her children would take it as her heirs, and the husband not be entitled to any interest therein, even if he survived her. And of course, if he died before her, he would never have any interest in the land. The only loss he could suffer by reason of the breach of this contract by Davis, would be in the event that he survived both his father-in-law and his wife, and she had survived her father; and then for the reason that if his wife had taken the fee, he would have been entitled to a dower interest of one-third of the land if he survives her, and being deprived of this, he would thereby be deprived of the use of one-third of the improvements. But there was no evidence on any of these points, and the finding of the court, in effect, that the damage of the plaintiff was the cost of the improvements, has no legal foundation on which to stand.

On the consideration of the whole case, we have come to the conclusion that the whole judgment as rendered, should be reversed, as it seems to be an entirety, and a new trial awarded on all the issues raised by the pleadings.

*Thos. Millikin*, for Plaintiff in Error.

*A. F. Hume* and *Morey, Andrews & Morey*, contra.